**Paul GARLASCO, Plaintiff,**

v.

**William T. STUART and Town of Bridgewater, Defendants.**

**No. 3:07CV00318 (DJS).**

United States District Court, D. Connecticut.

March 17, 2009.

**402**

Jason M. Lipsky, Law Offices of Jason M. Lipsky, LLC, Michael D. Fox, Lipsky-fox Secola, LLC, Waterbury, CT, John R. Williams, New Haven, CT, for Plaintiff.

John A. Blazi, Law Offices of John A. Blazi, Waterbury, CT, for Defendants.

### *MEMORANDUM OF DECISION AND ORDER*

DOMINIC J. SQUATRITO, District Judge.

█ The plaintiff, Paul Garlasco ("the Plaintiff") brings this action against the defendants, William T. Stuart ("Stuart") and the Town of Bridgewater ("the Town") (collectively, "the Defendants"), alleging that the Defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure, the Defendants have filed their "Motion to Dismiss [1] and for Summary Judgment." [2] (Dkt. # 20.) The Plaintiff has filed two motions to strike certain portions of the Defendants' submissions. (Dkt. # s 46 & 47) For the reasons that hereafter follow, the Defendants' motion to dismiss, which the Court construes as a motion for judgment on the pleadings (dkt. # 41), is **GRANTED in part and DENIED in part**, the motions to strike (dkt. # s 46 & 47) are **DENIED**, and the motion for summary judgment (dkt. # 41) is **GRANTED in part and DENIED in part**.

### I. MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. STANDARD

█ "After the pleadings are closed but within such time as not to delay trial,

1. The Plaintiff argues that the Defendants have waived their right to file a motion to dismiss for failure to state a claim because they did not file it before filing their responsive pleading as required by Rule 12(b). The Plaintiff, whose reading of Rule 12(b) is correct, thus addressed only the Defendants' summary judgment arguments. Nonetheless, the Second Circuit has held that if a motion to dismiss for failure to state a claim is filed after the pleadings have closed, it should be construed as a motion for judgment on the pleadings under Rule 12(c). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.2001) ("[A] motion to dismiss for failure to state a claim (or one of the other non-waivable defenses under Rule 12(h)) that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." (footnote omitted)). Therefore, the Court shall construe the Defendants' motion to dismiss as a motion for judgment on the pleadings.

2. The Defendants filed one all-encompassing document that contains both the motion to dismiss and the motion for summary judgment. This is not a preferred method of motion practice because the standards for, and analyses of, these two types of motions are different. The Court's decision necessarily must be divided into two general sections, one for the motion to dismiss, another for the summary judgment motion.

any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel,* 259 F.3d at 126. "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* "The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." *Id.*

## B. FACTS

The following facts are alleged in the amended complaint. The Plaintiff is an individual who resides in Connecticut. The Town is a municipality organized under the laws of Connecticut. Stuart, a Connecticut resident, is the First Selectman for the Town. He also serves as the Town's Chief of Police and Superintendent of Highways, and is the highest policy-setting official in the Town.

The Plaintiff owns an eighteen-acre parcel of property that is located in the Town and designated by the Town's Tax Assessor as parcel number 27–18 ("the Property"). The Property consists of several wooded acres, the access to which must be made via an "existing traveled way" that extends from the current travel way named "Old Town Highway."

On January 31, 2005, the Plaintiff applied for a variance with the Town's Zoning Board of Appeals ("the Zoning Board"). A hearing on that application was held on March 22, 2005. Stuart attended the meeting in his capacity as First Selectman, testified, and presented evidence, including evidence offered on behalf of another Town resident. Stuart also solicited and presented to the Zoning Board a legal opinion opposing the granting of the requested variance. The Zoning Board denied the Plaintiff's variance application.

Thereafter, on March 24, 2005, Stuart telephoned the Plaintiff to discuss the Property. Stuart, acting either for himself or another purchaser, verbally offered to purchase the Property from the Plaintiff by offering an amount far less than the Property's assessed value and the Plaintiff's purchase price for the Property. Stuart conditioned his offer on a threat that if the Plaintiff did not sell the property to him, he (Stuart) would use his position as First Selectman to deny the Plaintiff necessary permits so as to frustrate the Plaintiff's intended use for the Property. In addition, Stuart taunted the Plaintiff over the fact that the Plaintiff would be forced to continue to pay property taxes on the Property despite not being able to enjoy its intended use.

Thereafter, the Plaintiff filed an administrative appeal of the Zoning Board's decision in the Superior Court of Connecticut, Judicial District of Litchfield. This appeal was subsequently denied. The Plaintiff then appealed to the Appellate Court of Connecticut.

On November 29, 2006, on a preprinted form prepared by the Town, the Plaintiff applied for a driveway permit for the Property. This application was denied via a handwritten note appearing on the bottom of the Plaintiff's application. The note read "Permit Denied. WTS." On January 19, 2007, Stuart wrote to the Plaintiff, on official Town stationery, as follows: "Mr. Garlasco, I regret to inform you that your application for a driveway permit has been denied. I am returning your check in the amount of $500.00 for the driveway bond that has not been processed. Your application fee of $10.00 is not refundable."

On December 23, 2006, the Plaintiff was clearing fallen trees from the Property, when, suddenly and without prior notice, Stuart appeared on the Property, flashed his badge, proclaimed police authority as the Chief of Police, and threatened the Plaintiff with arrest and imprisonment unless the Plaintiff immediately ceased his actions and left the Property. Stuart also expressed his intention to block the entry to the Property so that the Plaintiff would be unable to access and use the Property. In response to Stuart's conduct, the Plaintiff left the Property.

The Plaintiff maintains that Stuart, using Town resources, then caused three large, immovable boulders to be placed in such a way as to prohibit the Plaintiff's access to and use of the Property. The Plaintiff also maintains that Stuart, using Town resources, caused dirt and crushed stone landfill to be placed in such a way so as to prohibit the Plaintiff's access to and use of the Property. The Plaintiff further maintains that Stuart, using Town resources, caused snow to be placed in such a way so as to prohibit the Plaintiff's access to and use of the Property. In addition, the Plaintiff contacted other Town officials and notified the Town of Stuart's conduct, but the Town has failed or refused to remedy Stuart's conduct.

## C. DISCUSSION

The Defendants first argue that: (1) the Plaintiff's Fifth Amendment unlawful takings claim, applicable to the Defendants via the Fourteenth Amendment, are not ripe; (2) the Plaintiff's Fourteenth Amendment substantive and procedural due process claims fail as a matter of law and are barred by res judicata; (3) the Plaintiff's

Fourth Amendment claim fails as a matter of law; and (4) the Plaintiff's Fourteenth Amendment equal protection claim fails as a matter of law.

The Court begins by noting that the Plaintiff, in his opposition memorandum, represents that he has sued the Defendants "for depriving him of his property without procedural or substantive due process of law, for denying him equal protection of the laws, for false arrest and for unreasonable force." (Dkt. # 48, p. 3.) Based on this representation, the Plaintiff is now alleging only the following: violations of his Fourteenth Amendment rights to due process; violations of his Fourteenth Amendment right to equal protection; violations of his Fourth Amendment right to be free from unreasonable force; [3] and violations of his right to be free from false arrest. The Court shall consider the Plaintiff to have withdrawn all claims brought under the Fifth Amendment or the Eighth Amendment. Therefore, with regard to the Plaintiff's Fifth and Eighth Amendment claims, the Defendants' motion for judgment on the pleadings is granted.

 In addition, the Court notes that the First Count is brought, pursuant to 42 U.S.C. § 1983, against Stuart in his official capacity. "Official-capacity suits under § 1983 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *O'Connor v. Pierson,* 482 F.Supp.2d 228, 231 (D.Conn.2007) (quoting *Monell v. N.Y. City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "'As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

---

**3.** It appears that the Plaintiff did not respond to the Defendants' arguments regarding the Fourth Amendment unreasonable force claim. As a result, the Court shall not discuss this claim in this part of the analysis, but shall discuss them in the summary judgment analysis.

respects other than name, to be treated as a suit against the entity.'" *Id.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). As a result, the claims against Stuart in his official capacity in the First Count are best read as being subsumed by the claims against the Town in the Third Count.

### 1. Substantive Due Process

To determine whether the Defendants violated the Plaintiff's substantive due process rights, the Court "must first inquire whether a constitutionally cognizable property interest is at stake." *Ferran v. Town of Nassau,* 471 F.3d 363, 369 (2d Cir.2006) (internal quotation marks omitted). As the Court reads the Plaintiff's allegations, his substantive due process claims fall into two categories: (1) the denials of the variance and driveway permit; and (2) the blocking of access to the Property.

#### a. Denials of the Variance and the Driveway Permit

■ "When a landowner alleges that he has been deprived of property in violation of the due process clause by the actions of a state zoning authority, [the Court] begin[s] [its] inquiry by determining whether a constitutionally cognizable property interest is at stake." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). "An applicant for a governmental permit has a protected property interest in the permit being sought only where the applicant has a clear entitlement to the approval sought from the government official or administrative body." *Id.* (internal quotation marks omitted). "In assessing whether a plaintiff has a clear entitlement to a permit, [the Court] focus[es] primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case." *Id.* (internal quotation marks omitted). "A

clear entitlement, and, in turn, a constitutionally protected property interest, exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Id.* (internal quotation marks omitted).

■ In the Court's view, the Plaintiff's amended complaint fails to state a viable substantive due process claim with regard to the denials of the variance and the driveway permit. The Plaintiff does not allege an entitlement or property interest in the variance or the driveway permit, nor does he allege that the Zoning Board or the Defendants lacked discretion in the issuance or enforcement of variances or driveway permits. The absence of these allegations in the amended complaint thus defeats the Plaintiff's substantive due process claim with regard to the variance and the driveway permit. Therefore, with regard to the Plaintiff's substantive due process claim as it relates to the variance and the driveway permit, the Defendants' motion for judgment on the pleadings is granted.

#### b. Blocking of Access to the Property's

■ With regard to the blocking off of the Property, the Plaintiff must show that "(1) that [he] had a valid property interest . . ., and (2) that the defendants infringed that property interest in an arbitrary or irrational manner." *Clubside, Inc. v. Valentin,* 468 F.3d 144, 152 (2d Cir.2006). In the Court's view, the Plaintiff has alleged these elements sufficiently in the amended complaint. The allegations in the amended complaint state that the Plaintiff owns the Property, thus giving him a legitimate claim of entitlement to it. Moreover, the allegations in the amended complaint state that Stuart, using Town resources, blocked the Property's access with boulders, stones, dirt, and snow in an attempt to, in

effect, make the Plaintiff's life miserable and compel him to sell the Property. These allegations are sufficient to survive a motion for judgment on the pleadings.[4] Therefore, with regard to the Plaintiff's substantive due process claim as it relates to the blocking of the Property's access, the Defendants' motion for judgment on the pleadings is denied.

### 2. Procedural Due Process

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see Patterson v. City of Utica,* 370 F.3d 322, 329 (2d Cir.2004) ("The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest."); *N.Y. State Nat'l Org. for Women*

*v. Pataki,* 261 F.3d 156, 164 (2d Cir.2001) ("*NOW*") ("[P]rocedural due process protects only important and substantial expectations in life, liberty, and property"). As the Supreme Court has maintained, although "'[l]iberty' and 'property' are broad and majestic terms," *Roth,* 408 U.S. at 571, 92 S.Ct. 2701, "the range of interest protected by procedural due process is not infinite," *id.* at 570, 92 S.Ct. 2701.

"The Fourteenth Amendment due process guarantee ... only extends to property claims to which an individual has a 'legitimate claim of entitlement.'" *NOW,* 261 F.3d at 164 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). That is, the Plaintiff must demonstrate that he possessed "a property interest of constitutional dimension." *Furlong v. Shalala,* 156 F.3d 384, 393 (2d Cir.1998). "A cognizable property interest is more than just a 'unilateral expectation,'" *id.,* for procedural due process does not protect "trivial and insubstantial interest[s]," *Ezekwo v. NYC Health & Hosps. Corp.,* 940 F.2d 775, 783 (2d Cir.1991). Indeed, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or

---

**4.** In the Court's view, the Defendants' reliance on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) is misplaced. In *Williamson,* the owner of a tract of land sued a Tennessee regional planning commission alleging that the commission's application of various zoning laws and regulations to the plaintiff's property amounted to an unconstitutional "taking" under the Fifth Amendment. *Id.* at 175, 105 S.Ct. 3108. The Supreme Court found that the plaintiff's claim was not ripe for review. *Id.* at 186, 105 S.Ct. 3108. The Supreme Court held that in order to meet the ripeness requirement, a plaintiff alleging a Fifth Amendment taking of a property interest must satisfy a two-prong test and show that (1) the state regulatory entity has rendered a "final decision" on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure. *Id.* at 186, 105 S.Ct. 3108. According to the

Supreme Court, the plaintiff had not received a "final, definitive" decision. *Id.* at 191, 105 S.Ct. 3108. "The ripeness requirement of *Williamson,* although announced in a takings context, has been extended to equal protection and due process claims asserted *in the context of land use challenges."* *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002) (emphasis added); *see Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 96–97 (2d Cir.1992). Here, however, the Court is not presented with the usual set of circumstances involving a plaintiff's entanglements with a planning and zoning commission, i.e., a land use challenge. Instead, this specific allegation involves Stuart supposedly blocking access to the Property with physical materials, such as stones and dirt. Therefore, *Williamson's* two-pronged test of "final decision" and "just compensation by means of an available state procedure" appears to be inapplicable.

desire for it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

As the Court found above when discussing substantive due process, the Plaintiff did not have a legitimate claim of entitlement to either the variance or the driveway permit. Therefore, with regard to the variance and the driveway permit, his amended complaint fails to allege a viable procedural due process claim. For the procedural due process claim regarding the blocking of access to the Property, however, the Court believes that the amended complaint is sufficient to survive a motion for judgment on the pleadings.[5] Therefore, with regard to the Plaintiff's procedural due process claim as it relates to the variance and the driveway permit, the Defendants' motion for judgment on the pleadings is granted, and with regard to the Plaintiff's procedural due process claim as it relates to the blocking of access to the Property, the Defendants' motion for judgment on the pleadings is denied.

### 3. Equal Protection

 In the amended complaint, the Plaintiff alleges that Stuart intentionally and irrationally treated the Plaintiff differently from all other identically-situated property owners in the Town. This is a so-called "class-of-one" equal protection claim based on the Supreme Court's decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Because the amended complaint does allege that the Plaintiff was treated differently, and because an analysis under *Olech* requires an examination of comparators, the Court shall not grant the motion for judgment on the pleadings with regard to the equal protection claim, but rather shall address this claim in the summary judgment discussion. Therefore, with regard to the Plaintiff's equal protection claim, the Defendants' motion for judgment on the pleadings is denied.

### 4. False Arrest[6]

 In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe,* 186 Conn. 265, 267, 440 A.2d 973 (1982). "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414 (1992) (internal quotation marks omitted). The restraint must be accomplished "through the exercise of force." *Id.* at 821, 614 A.2d 414. "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Green,* 186 Conn. at 268, 440 A.2d 973.

---

**5.** The Defendants argued that the Plaintiff's procedural due process claims should be dismissed because they failed *Williamson* 's two-pronged test, which the Court has found does not apply to the allegations that Stuart blocked the access to the Property.

**6.** It is unclear whether this false arrest claim is brought solely under Connecticut law, solely under § 1983, or under both. Any such distinction is not material to this analysis, though, as "[c]laims for false arrest ...

brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest ... under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). Moreover, only a very generous reading of the amended complaint would allow one to think that the Plaintiff has even brought a false arrest claim. The Court shall nonetheless address this claim here.

In the Court's view, the amended complaint fails to state a viable false arrest claim for the simple reason that the Plaintiff does not allege that he himself was physically restrained by the Defendants. There is no allegation that Stuart ever placed the Plaintiff under arrest or took the Plaintiff into his (Stuart's) custody. Stuart's alleged threats to arrest the Plaintiff are, based on established case law, simply insufficient to support a false arrest claim. Absent any allegations of physical restraint, a false arrest claim must fail. Therefore, with regard to the Plaintiff's false arrest claim, the Defendants' motion for judgment on the pleadings is granted.

## II. SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reason-able jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. MOTIONS TO STRIKE

The Plaintiff moves to strike certain paragraphs of the Defendants' Local Rule 56(a)(1) Statement ("Local Rule Statement"). (*See* dkt. # s 46 & 47.) The Plaintiff argues that Paragraph 8 of the Defendants' Local Rule Statement is too vague (dkt. # 46) and that Paragraphs 17, 18, 29, 32, and 36 fail to indicate the person or persons about whom the factual allegations in those paragraphs are made (dkt. # 47).

The undersigned has previously expressed his disinclination to the filing of motions to strike during the summary judgment process. *See Martin v. Town of Westport*, 558 F.Supp.2d 228, 230–32 (D.Conn.2008). "[I]n the context of summary judgment, motions to strike are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion." *Id.* 231 (internal quotation marks omitted). The Court "knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving ipse dixit of a particular party." *Id.* Consequently, the Court sees no need to "strike" any portion of the Defendants' Local Rule statement, and the motions to strike (**dkt. # s 46 & 47**) are **DENIED**.

Court does, however, take note of the Plaintiff's objections. While the Court does not agree that Paragraph 8 of the Defendants' Local Rule Statement is necessarily too vague, the Court does agree that Paragraphs 17, 18, 29, 32, and 36 fail to indicate the person or persons about whom the factual allegations in those paragraphs are made. It appears, however, that those paragraphs were, in large part, copied almost verbatim from Stuart's affidavit signed on June 10, 2008. Thus, a logical reading of the "I read a posting," "my participation," and "I ... acted" language in the Local Rule Statement is that this language refers to Stuart. The "we determined" language appears to reference Stuart and someone named Ed Bennett, and the "our hounds" language appears to reference hounds used by the fox hunting club of which Stuart is a member. Therefore, although the transference of factual allegations from Stuart's affidavit to the Defendants' Local Rule Statement was not performed meticulously, the intended meaning of the above-mentioned paragraphs is clear to the Court.

### C. FACTS

Because the Court, in the analysis for the motion for judgment on the pleadings, has already set forth some of the facts of this case, the Court here shall relate only those additional facts gleaned from the materials (i.e., depositions, answers to interrogatories, affidavits, and other documentary evidence) submitted in support of summary judgment. Moreover, in ruling on the motion for judgment on the pleadings, the Court had to accept as true the factual allegations in the amended complaint. The standard for summary judgment is different. Thus, the Court shall supplement or amend a fact stated in the motion for judgment on the pleadings discussion above if the evidence in the record so requires.

The Court also points out that, in light of the ruling on the motion for judgment on the pleadings, the claims, and hence the relevant facts, in this case have narrowed. The claims that survived the motion for judgment on the pleadings are: (1) the substantive and due process claims with regard to the blocking of property owned by the Plaintiff; (2) the equal protection claim; and (3) the Fourth Amendment unreasonable force claim.

Given the above, the relevant facts are as follows. On April 1, 2004, the Plaintiff, who is an attorney, purchased an undeveloped, eighteen-acre parcel of property located in the Town. This parcel, known locally as "neck of the woods," is located in the Town's R–3 Zone. This parcel also appears to have been landlocked insofar as it did not front on any road or traveled way. Subsequently, on April 8, 2004, he purchased a strip of property that connected the previously-purchased parcel to a discontinued road.[7]

The status of the discontinued road is a point of contention between the parties. It appears that the discontinued road was once a part of a greater road formerly known as the "Old Town Highway," which in turn (based on what the Court has read in the record) may have been a traveled pathway before any European settlement in the area. In 1980, the Town designated a portion of Old Town Highway as an official town highway ("the Town Road"). The Town Road ends in a cul-de-sac. The remaining section of the Old Town Highway ("the Discontinued Road") extends off the Town Road's cul-de-sac. The Discontinued Road was not made an official town highway in 1980, nor does it appear that it was ever made an official town highway.

---

**7.** The Court shall refer to the parcel and strip as "the Property."

The Property, via the Plaintiff's April 8, 2004 purchase of the strip of land, fronted the Discontinued Road, but not the Town Road.

The Plaintiff wished to construct a dwelling on the Property. Thus, he applied to the Zoning Board for a variance from the Town's frontage requirements, alleging that the variance was needed due to hardship. The Zoning Board denied his request for a variance.[8] According to the Plaintiff, a few days after the Zoning Board denied the variance application, Stuart called the Plaintiff and tried to purchase the Property. The Plaintiff also maintains that Bennett later told the Plaintiff that Stuart wanted to buy the Property "for a charity," while someone named Leo Knoll told the Plaintiff that Stuart wanted to acquire the Property for the Town's Land Trust.

The Plaintiff then appealed the Zoning Board's decision to the Connecticut Superior Court. The Superior Court found that, although the Plaintiff was not prevented from applying for a variance by the so-called "purchase with knowledge rule," and although the Plaintiff has a right-of-way over the Discontinued Road, he had not suffered exceptional difficulty or unusual hardship as a result of the denial of the variance. *See Garlasco v. Zoning Bd. of Appeals of Town of Bridgewater*, No. LLICV054002236, 2006 WL 225276 (Conn.Super.Ct. Jan. 11, 2006). The Plaintiff then appealed the Superior Court's ruling. The Connecticut Appellate Court affirmed the judgment of the Superior Court. *See Garlasco v. Zoning Bd. of Appeals of Town of Bridgewater*, 101 Conn.App. 451, 922 A.2d 227 (2007).[9]

The Plaintiff testified in his deposition that, on December 23, 2006, he was cutting trees located on property owned by a Susan Hansen ("Hansen"). According to the Plaintiff, he had Hansen's permission to do so. The Plaintiff maintains that he was cutting pieces of a dead tree that were hanging across the Discontinued Road. The Plaintiff testified that he was doing this cutting on the Discontinued Road, approximately thirty yards from the Town Road's cul-de-sac. The Plaintiff contends that Stuart then arrived on the scene in a jeep, threatened the Plaintiff with time in jail if he (the Plaintiff) cut down another tree, and stated that he was going to shut down the Discontinued Road. Stuart, for his part, contends that he did not use force on the Plaintiff and he never stated that he would arrest the Plaintiff. Stuart claims

8. At all times relevant to the amended complaint, Edward Bennett ("Bennett") served as the Zoning Board's Chairman, and Attorney Michael Zizka ("Zizka") served as the Town's Land Use Attorney. The Plaintiff has called into question the proceedings before the Zoning Board, alleging that Stuart, in essence, sabotaged the Plaintiff's efforts and bullied the members of the Zoning Board into denying his application for a variance. The Plaintiff also alleges that Zizka had given him advice about formulating his variance application, representing that although he (Zizka) represented the Town, he had not done anything for the Zoning Board in a long time and did not think there was a conflict in advising the Plaintiff. According to the Plaintiff, however, Zizka (allegedly at Stuart's insistence) was present at the Zoning Board meeting for

the Plaintiff's application and advised the Zoning Board on several grounds on which it could deny the application. Regardless of whether these allegations are true, the Court finds them to be irrelevant to the discussion here because the Plaintiff's due process claims with regard to the variance fail as a matter of law.

9. Because the Appellate Court agreed with the Superior Court's finding that the Plaintiff had not demonstrated hardship, it did not reach the issue of whether the Superior Court had properly concluded that the Plaintiff has a right-of-way over the Discontinued Road. *Garlasco*, 101 Conn.App. at 452 n. 2, 922 A.2d 227.

he told the Plaintiff it was illegal to cut trees on other people's property, and informed the Plaintiff that he would call the State Police.

Stuart then caused certain materials (which the Plaintiff claims were boulders, stones, dirt, and snow) to be placed at the end of the Town Road's cul-de-sac to block vehicular access to the Discontinued Road. According to Stuart, he did this after receiving complaints from the Plaintiff's neighbors, and he blocked off the Discontinued Road because he did not want to have to constantly monitor that area. Stuart maintains that he believed the blocking off of the Discontinued Road was a legitimate exercise of his police powers. The Plaintiff, for his part, maintains that Stuart's conduct here denied him access to the Property.

On June 12, 2007, the Plaintiff purchased a parcel of land from Hansen. This parcel apparently extends to the Town Road. Subsequently, in December 2007, Stuart caused the materials blocking the Discontinued Road to be removed.

## D. DISCUSSION

As the Court noted above, the remaining claims are the substantive and due process claims with regard to the blocking of property owned by the Plaintiff, the equal protection claim, and the Fourth Amendment unreasonable force claim. In the Court's view, the propriety of the denials of the variance and driveway applications is not at issue. Indeed, the Connecticut Superior and Appellate Courts have already decided the Plaintiff's appeals of the Zoning Board's denial of the variance, and this Court may not disturb those decisions.

### 1. Unreasonable Force

The Plaintiff has alleged that the Defendants exercised unreasonable force against him. The Fourth Amendment to the Unit-

ed States Constitution states that "[t]he right of the people to be secure in their persons, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams*, 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

The Defendants moved for summary judgment and presented arguments on this issue. The Plaintiff, however, did not respond to these arguments. Therefore, the Court deems the unreasonable force claim to be abandoned. *See Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F.Supp.2d 197, 206 (D.Conn.2008).

Moreover, this claim appears to fail as a matter of law. Fourth Amendment unreasonable force claims tend to arise out of circumstances involving "law enforcement officers ... us[ing] excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen...." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The record is devoid of any evidence that Stuart or a Town officer employed such measures against the Plaintiff, or even that the Plaintiff's person was subject to any physical force at all. Therefore, with regard to the Plaintiff's unreasonable force claim, the Defendants' motion for summary judgment is granted.

### 2. Equal Protection

The Plaintiff claims that the Defendants violated his right to equal protection under the Fourteenth Amendment. The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1. The Supreme Court has held that the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 "Traditionally, the Equal Protection clause of the Fourteenth Amendment protects against [classification-based] discrimination." *Spanierman v. Hughes*, 576 F.Supp.2d 292, 304 (D.Conn.2008) (internal quotation marks omitted). That is to say, the courts

> apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose.... Classifications based on race or national origin ... and classifications affecting fundamental rights ... are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.

*Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (internal citations omitted). As the Second Circuit has pointed out, rational basis review generally applies, whereas the higher forms of review (i.e., strict scrutiny and intermediate scrutiny) apply in the "limited circumstances" where "the subject of the different treatment is a member of a class that historically has been the object of discrimination." *Able v. United States*, 155 F.3d 628, 631–32 (2d Cir.1998).

In this case, however, the Plaintiff does not base his equal protection claim pursuant to the "traditional," i.e., classification-based, equal protection analysis, nor does he argue that he has been discriminated against because he is a member of one of the classifications traditionally protected by strict or intermediate scrutiny under the Equal Protection Clause. Rather, he asserts a "class-of-one" equal protection claim based on the Supreme Court's decision in *Olech*. In *Olech*, the Supreme Court recognized that successful class-of-one equal protection claims can be brought "where the plaintiff alleges that [ ] he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564, 120 S.Ct. 1073. Courts allow plaintiffs to bring class-of-one claims because "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* (internal quotation marks omitted).

 "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir.2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139–40 (2d Cir.2008). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are *prima facie* identical." *Id.* at 105 (internal quotation marks omitted); *see Inturri v. City of Hartford*, 365 F.Supp.2d 240, 251 (D.Conn.2005) (holding that, to be considered similarly situated, "employees must be similarly situated in all material respects.") (internal quotation marks omitted). The Second Circuit requires a "class of one" plaintiff to show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree

that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Neilson,* 409 F.3d at 105. "[T]his test is simply an adaptation of the rational review standard applicable to equal protection 'class of one' cases." *Id.* at 105 n. 3; *see Weinstein v. Albright,* 261 F.3d 127, 140 (2d Cir.2001) (noting that rational basis review applies to equal protection claims not based on plaintiff's membership in a suspect class or on effects of the challenged action on fundamental rights).

The Plaintiff claims that the Defendants subjected him to disparate treatment in comparison to those landowners who are Stuart's friends or business associates. According to the Plaintiff, the Defendants enforce a "two-class system" with regard to real property matters, and the Plaintiff fell on the wrong side of that divide. Thus, he alleges, the Defendants violated his right to equal protection.

 The Court believes that the Plaintiff has presented insufficient evidence to sustain his equal protection claim. As noted above, the Plaintiff must show that the Defendants intentionally treated him *differently* from others similarly situated. The Plaintiff has submitted affidavits from various individuals who describe Stuart's allegedly wrongful or illegal actions, some of which relate to real property matters. The affidavits from these individuals assuredly do not shine a positive light on Stuart; however, they are not helpful to the Plaintiff's class-of-one equal protection claim because, in essence, all of these individuals were subjected to Stuart's alleged malfeasance. That is, they do not demonstrate that the Defendants treated people differently for no rational reason. In-stead, they demonstrate that the Defendants treated them in the same way that the Defendants treated the Plaintiff, i.e., poorly

A proper comparator here would be someone similarly situated to the Plaintiff, namely, someone owning property with a similar situation to the Plaintiff's, who was allowed a driveway permit or a variance like the one requested by the Plaintiff. Presumably, such a comparator would be one of Stuart's friends or "cronies." The Plaintiff, however, has not submitted evidence in this regard. On summary judgment, it is not sufficient for the Plaintiff to simply allege that Stuart treats all the members of the Town, except for those favored by Stuart, badly. Consequently, with regard to the Plaintiff's equal protection claim, the Defendants' motion for summary judgment is granted.

### 3. Substantive Due Process

 "Substantive due process is an outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999). The Supreme Court has emphasized "that the touchstone of due process is protection of the individual against arbitrary action of government ... whether the fault lies in a denial of fundamental procedural fairness, ... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis,* 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotations and citations omitted). With regard to substantive due process,

[t]he Supreme Court has enunciated two alternative tests by which substantive due process is examined.

Under the first test, the plaintiff must prove that the governmental body's conduct "shocks the conscience." ... Un-

der the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause.

*DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997) (internal citations omitted).

■ The parties do not dispute that the Plaintiff, as the owner of the Property, had a legitimate claim of entitlement to it.[10] As a general matter, the Plaintiff is entitled to access his own Property. The question then becomes whether the Plaintiff had a right, i.e., a legitimate claim of entitlement, to access the property via the Discontinued Road. "Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

■ Under Connecticut law, "[p]roperty owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway...." Conn. Gen.Stat. § 13a–55. In interpreting Conn. Gen.Stat. § 13a–55, the Connecticut Supreme Court has held the following:

[T]he effect of § 13a–55 is to alter the common law consequences of the discontinuance of a public highway. While, before the statute, discontinuance extinguished both the public easement of travel and the private easement of access ... after the statute, the public easement ceases but the private easement remains. The abutting owners now continue to have an easement of access over the discontinued highway. *Tighe v. Town of Berlin,* 259 Conn. 83, 88, 788 A.2d 40 (2002) (internal quotation marks omitted). Thus, although a "public right of travel over [an] abandoned portion of [a road] terminate[s] when [a municipality] formally abandone[s] that segment of the roadway[,]" "property owners ... who own land abutting [a road] continue [ ] to have a private right of access over the abandoned portion of [the road]." *Id.* at 88–89, 788 A.2d 40.

■ Given the above, the Court rejects the argument that because the Plaintiff did not own the Discontinued Road, he had no right to use it. The language in the statute and in *Tighe* is clear: one who owns property that abuts a discontinued or abandoned road has a right to use that road. The Defendants' argument that the Plaintiff's right to use the Discontinued Road at the time, or the meaning of the Connecticut law at the time, was "uncertain," is patently without merit. The Plaintiff owned land that abutted the Discontinued Road. He therefore had a right to use that road.[11]

---

**10.** The Defendants do not argue that Fourteenth Amendment substantive due process claims regarding real property is subsumed by the Takings Clause of the Fifth Amendment. Although the Second Circuit does not appear to have expressly ruled on this issue, in the Court's view, the Takings Clause does not subsume all substantive due process claims. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.,* 509 F.3d 1020 (9th Cir.2007); *Simi Inv. Co., Inc. v.*

*Harris County, Tex.,* 236 F.3d 240 (5th Cir. 2000); *Poorbaugh v. United States,* 27 Fed.Cl. 628, 633 (1993).

**11.** The Court points out that Judge Pickard came to the same conclusion when deciding the Plaintiff's appeal of the Zoning Board's decision to deny him a variance. *See Garlasco,* 2006 WL 225276, at *2.

The Court also rejects the argument that because the Plaintiff could have accessed the Property from the other end of the Discontinued Road, he had no right to access the Discontinued Road at the specific portion of the Discontinued Road where Stuart had placed the obstructions. As seen above, Connecticut statute provides the Plaintiff with "a right-of-way for all purposes for which a public highway may be now or hereafter used *over such discontinued or abandoned highway to the nearest or most accessible highway....*" Conn. Gen.Stat. § 13a–55 (emphasis added). As the Court reads the statute, the Plaintiff had the express right to use the Discontinued Road in order to access the nearest or most accessible public highway. From what the Court can discern in the record, the Town Road was the nearest public highway to the Property. Therefore, the Plaintiff had a right to use portion of the Discontinued Road that allowed him to access the Town Road, which was the portion of the Discontinued Road to which Stuart prevented access. Because Connecticut law gives the Plaintiff a right to access that portion of the Discontinued Road, the fact that he may have accessed his Property from the other end of the Discontinued Road is irrelevant.[12]

 Given the fact that the Plaintiff had a right to access his Property and that the Plaintiff had a right to use the Discontinued Road to access his Property, the next question is whether Stuart violated this right. "[T]he substantive component of the Fourteenth Amendment's Due Process Clause forbids the government from burdening, in a constitutionally arbitrary way, an individual's property rights."

*O'Connor v. Pierson,* 426 F.3d 187, 204 (2d Cir.2005). " '[C]onstitutionally arbitrary' action for purposes of a property-based substantive due process claim is action that shocks the conscience." *Id.*

 "The shocks-the-conscience test is necessarily imprecise. As the [Supreme] Court explained in [*Lewis* ], 'the measure of what is conscience-shocking is no calibrated yard stick....' " *Id.* at 203 (quoting *Lewis,* 523 U.S. at 847, 118 S.Ct. 1708). "Nonetheless, [courts] can glean from [*Lewis* ] this important principle: whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *Id.* Thus, "[i]f [a defendant] acted out of incompetence or confusion, this would not support substantive due process liability, for '[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised ... decisions.' " *Id.* at 204 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). On the other hand, "if [a defendant] acted out of spite, or to keep [a plaintiff] from [exercising a right] by whatever means necessary, then the [defendant's] actions, intended to oppress [the plaintiff] and having burdened his right ..., would shock the conscience." *Id.*

 The Court believes that a reasonable jury could conclude that Stuart's conduct was constitutionally arbitrary, hence shocking the conscience. There is evidence, via the Plaintiff's deposition testimony, that Stuart blocked the Discontinued Road in an effort to prevent the Plaintiff from using it. A reasonable jury could consider this to be a spiteful act

---

**12.** The Court does not see any evidence in the record demonstrating where the other end of the Discontinued Road (i.e., the end of the Discontinued Road that does not meet the Town Road's cul-de-sac) is or was during the time period relevant to this case. That other end may meet another Town highway; on the other hand, it may simply end in the woods or in a field.

intended to oppress the Plaintiff and burden his right to use the Discontinued Road.

Moreover, a reasonable jury could find Stuart's reason for blocking off the Discontinued Road to not be credible. Stuart maintains that he blocked vehicular access to the Discontinued Road because the Town does not have the resources to monitor the Discontinued Road. According to Stuart, blocking access in this way was a legitimate exercise of his police powers and was the most efficient method to prevent the Plaintiff and others from accessing the area. A reasonable jury, however, could question this explanation in a number of ways. To being with, it has been the Defendants' contention throughout this case that the Discontinued Road is not a Town highway. Therefore, the Court fails to see why it would have been the responsibility of the Town's police to "monitor" the Discontinued Road as if it were a Town highway. Moreover, because the Discontinued Road was not a Town highway, which the Defendants consistently have argued, a jury may also wonder what authority Stuart had to blockade it.

In addition, a reasonable jury could question the timing of Stuart's blockade. The Town admits that it abandoned the Discontinued Road in 1980. It appears that even then Stuart was a part of the Town's government. Yet Stuart did not feel it was necessary (on account of the Town's lack of monitoring resources) to block vehicular access to the Discontinued Road until 2007, after his dealings with the Plaintiff. That is, it appears that for twenty-seven years, Stuart was not concerned about any lack of resources to monitor the Discontinued Road.[13] In the Court's view, a reasonable jury, given the above, could find that the Stuart's conduct was constitutionally arbitrary. Consequently, with regard to the Plaintiff's substantive due process claim as it relates to the blocking of the Discontinued Road, the Defendants' motion for summary judgment is denied.

### 4. Procedural Due Process

The Court believes that, given the substantive due process discussion above, the procedural due process discussion need not be extensive. "The requirements of procedural due process apply ... to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701. That is, "The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest." *Patterson v. City of Utica,* 370 F.3d 322, 329 (2d Cir.2004).

Stuart appears to have unilaterally decided to block the Discontinued Road, which the Plaintiff had a right to use. Neither Stuart nor the Town provided the Plaintiff (or any other Town residents with property abutting the Discontinued Road) with the opportunity for a hearing prior to this act. Therefore, with regard to the Plaintiff's procedural due process claim as it relates to the blocking of the Discontinued Road, the Defendants' motion for summary judgment is denied.

### 5. Qualified Immunity

■■■ Stuart also argues that, even if his conduct was unconstitutional, he is entitled

---

**13.** Furthermore, after the Plaintiff purchased additional property fronting the Town Road, Stuart, in December 2007, removed the materials blocking the Discontinued Road. A reasonable jury could wonder why Stuart then became unconcerned about the lack of resources to monitor the Discontinued Road.

to qualified immunity in his individual capacity. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

▆▆▆ The Supreme Court established the analysis for determining whether an officer is entitled to qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

▆▆▆ In the Court's view, Stuart is not entitled to qualified immunity. As discussed above, the facts alleged here are sufficient to show that Stuart's blocking of the Discontinued Road violated a constitutional right. The next step is to ask whether the right was clearly established, i.e., would it have been clear to a reasonable officer that this conduct was unlawful in the situation he confronted.

The Court believes that the law was clearly established at the time. Conn. Gen.Stat. § 13a–55 had been enacted well before the relevant time period here. *Tighe,* which analyzed Conn. Gen.Stat. § 13a–55 in detail, was five years old when Stuart blocked the Discontinued Road. Both Conn. Gen.Stat. § 13a–55 and *Tighe* clearly gave the Plaintiff the right to use the Discontinued Road. Therefore, a reasonable officer in Stuart's position should have known that his conduct was unlawful. Consequently, with regard to the Stuart's request for qualified immunity, the Defendants' motion for summary judgment is denied.

### 6. Municipal Liability

▆▆▆ "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "The fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018). "[A] municipality may not be found liable simply because one of its employees committed a tort .... [and] a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of respondeat superior." *Id.* (internal citation and quotation marks omitted).

▆▆▆ "Where a plaintiff seeks to hold a municipality liable for a single decision by [a] municipal policymaker [ ], ... the plaintiff must show that the official had final policymaking power...." *Id.* at 37 (internal citations and quotation marks

omitted). "Moreover, the challenged actions must be within that official's area of policymaking authority." *Id.* "[T]he critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Id.*

▮ With regard to the municipality liability argument, the Defendants argue only that because the Plaintiff did not have a constitutionally-protected right here, and because Stuart cannot be found liable for infringing on a constitutionally-protected right, the Town cannot be found liable. In essence, the Defendants argue because Stuart is not liable, the Town is not liable. The Court, however, has found that certain due process claims may proceed against Stuart, thus negating the Defendants' argument here. Therefore, the Court shall not grant summary judgment in favor of the Town on that basis, and the Town has not presented any other argument on this issue.

Furthermore, Stuart was both the First Selectman and the Chief of Police for the Town. As First Selectman, he served as the Town's Chief Executive Officer, oversaw the day-to-day operation of Town government, ensured the care and maintenance of Town property subject to the care of the Selectmen, presided over all Board of Selectmen meetings, and served as an *ex officio* member of all other Town boards, commissions, and agencies.[14] As the Chief of Police, he ran the police department. In the Court's opinion, Stuart was the final policymaker with respect to the particular conduct at issue here, especially considering that it was his responsibility to care for and maintain Town property and enforce the laws. Consequently,

with regard to the Town's argument that it cannot be held liable in this case, the Defendants' motion for summary judgment is denied.

## III. CONCLUSION

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

For the foregoing reasons, the Defendants' motion to dismiss, which the Court has construed as a motion for judgment on the pleadings (**dkt. # 41**), is **GRANTED in part and DENIED in part.**

The motion for judgment on the pleadings is **GRANTED** with regard to: (1) the Plaintiff's Fifth Amendment claim; (2) the Plaintiff's Eighth Amendment claim; (3) the Plaintiff's Fourteenth Amendment substantive and procedural due process claims as they relate to the variance and the driveway permit allegations; and (4) the Plaintiff's false arrest claim.

The motion for judgment on the pleadings is **DENIED** with regard to: (1) the Plaintiff's Fourteenth Amendment equal protection claim; and (2) the Plaintiff's Fourteenth Amendment substantive and procedural due process claims as they relate to the blocking of the Plaintiff's access to his Property; and (3) the Plaintiff's Fourth Amendment unreasonable force claim.

### B. MOTION FOR SUMMARY JUDGMENT

For the foregoing reasons, the Plaintiff's motions to strike (**dkt. # s 46 & 47**) are **DENIED,** and the Defendants' motion for summary judgment (**dkt. # 41**) is **GRANTED in part and DENIED in part.**

---

**14.** The Town's website provides this description of the First Selectman's duties. *See*

http://www.bridgewatertownhall.org/first selectman.html

The motion for summary judgment is **GRANTED** with regard to: (1) the Plaintiff's Fourteenth Amendment equal protection claim; and (2) the Plaintiff's Fourth Amendment unreasonable force claim.

The motion for summary judgment is **DENIED** with regard to (1) the Plaintiff's Fourteenth Amendment substantive and procedural due process claims as they relate to the blocking of the Plaintiff's access to his Property; (2) Stuart's request for qualified immunity in his individual capacity; and (3) the Town's argument that, as a municipality, it is not liable to the Plaintiff.

*Therefore, the only remaining claims for trial are: (1) the Plaintiff's Fourteenth Amendment substantive and procedural due process claims, brought against William T. Stuart in his individual capacity pursuant to 42 U.S.C. § 1983, as they relate to the blocking of the Plaintiff's access to his Property; and (2) the Plaintiff's claim that the Town of Bridgewater is liable for William T. Stuart's alleged violation of the Plaintiff's rights.*