JAMES TIGHE ET AL. *v.* TOWN OF
BERLIN ET AL.
(SC 16439)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 23, 2001—officially released January 22, 2002

*Joseph A. O'Brien*, for the appellants (named plaintiff et al.).

*E. Timothy Sullivan, Jr.*, for the appellee (named defendant).

*Opinion*

NORCOTT, J. The sole issue in this appeal[1] is whether the trial court improperly denied the request for an injunction by the named plaintiff, James Tighe, and the plaintiff, Joyce Tighe, to require the removal of a traffic gate erected to control access to and from an abandoned roadway. The plaintiffs appeal from the judgment of the trial court denying their request for an injunction against the named defendant, the town of Berlin.[2] The

---

[1] The plaintiffs originally appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] This action originally was brought by multiple plaintiffs against multiple defendants. James Tighe and Joyce Tighe are the only remaining plaintiffs and the town of Berlin is the sole remaining defendant. Hereinafter, references to the plaintiffs are to James Tighe and Joyce Tighe, and references to the defendant are to the town of Berlin.

plaintiffs argue that the trial court improperly interpreted the scope of General Statutes § 13a-55.[3] The plaintiffs further argue that the trial court improperly concluded that the continued gating of the abandoned road did not cause the plaintiffs irreparable harm. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiffs own developed and undeveloped property in Middletown. The plaintiffs' property abuts Stantack Road, which runs in a north-south direction, with the northern portion in Berlin, and the southern portion in Middletown. The northern portion of Stantack Road ends at an intersection with Spruce Brook Road, and the southern portion ends at an intersection with Footit Road. Stantack Road is an undeveloped roadway and generally requires the use of a four-wheel drive vehicle. On or about March 24, 1995, the defendant formally abandoned, as a public roadway, the entire length of Stantack Road that existed within that town.

In the mid-1990s, a residential subdivision was built on the property bordering the western edge of Stantack Road and the southern edge of Spruce Brook Road in Berlin. The developers, Louis Valentine and Louise Valentine (Valentine), constructed a new roadway that runs through the middle of the subdivision. The new road, Lamentation Drive, provides access to homes in the development from Spruce Brook Road. Lamentation Drive was constructed so that a portion of it intersects and runs on top of the abandoned Stantack Road.

---

[3] General Statutes § 13a-55 provides: "Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway."

At some point during the construction of the development, the Berlin planning and zoning commission requested that Valentine erect a gate near the intersection of Lamentation Drive and Stantack Road to prevent motor vehicles from entering Lamentation Drive. The gate was installed after residents in the subdivision complained about excessive noise and the use of motorized, all-terrain vehicles, motorcycles and other four-wheel drive vehicles in the area, which often involved speeding and other reckless driving. Residents also complained about the use of the land off of Stantack Road for parties. Moreover, residents in the Valentine subdivision complained to the Berlin police that, on one occasion, they had confronted several intoxicated men who were attempting to ride their motorcycles in the area.

A gate was installed by the developer, but eventually was knocked down, and, in 1998, because of continued complaints from residents, the defendant erected a stronger gate. The gate was erected within the right-of-way of Lamentation Drive. It was equipped with a lock and keys were made available to all the owners of abutting property to Stantack Road, including the plaintiffs. While the Stantack Road property owners have unimpeded access to their properties from the south, via Footit Road, access from the north can be obtained only by unlocking the gate.

The plaintiffs commenced this action seeking to enjoin the defendant from maintaining this gate.[4] More specifically, the plaintiffs asked the court to order the

---

[4] The complaint originally was brought in four counts. The parties stipulated to judgment in favor of the named defendant, as well as in favor of the other defendants no longer a part of this appeal, on the third and fourth counts. At oral argument before this court, the plaintiffs admitted that the second count of their complaint may be considered withdrawn. The only remaining count at issue in this appeal, therefore, is the first count of the complaint.

removal of the gate so that access from Lamentation Drive onto Stantack Road, and vice versa, would not be impeded. A bench trial was held on March 23, 2000, and on August 1, 2000.[5] On August 9, 2000, the trial court rendered judgment denying the plaintiffs' request for an injunction to require the defendant to remove the gate. The court, however, did order the defendant to expand the distribution of keys to the gate to include family members of the property owners of land abutting Stantack Road, as well as any legitimate guests accompanied by one of these property owners. The plaintiffs appeal from this judgment.

We begin with "the governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction: A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992). Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion; *Wehrhane* v. *Peyton*, 134 Conn. 486, 498, 58 A.2d 698 (1948); the trial court's decision must stand. . . . *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995). The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issu-

---

[5] Hon. Frances Allen, judge trial referee, originally presided over this matter. Before a decision was issued, however, Judge Allen passed away. The matter was thereafter transferred to Judge Rittenband for further proceedings and a decision.

ance of the injunction, the party seeking it will suffer irreparable harm. *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 402, 426 A.2d 784 (1980)." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.*, v. *Orange*, 256 Conn. 557, 566, 775 A.2d 284 (2001). We note also that, "[i]n exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." *Moore* v. *Serafin*, 163 Conn. 1, 6, 301 A.2d 238 (1972).

We first consider the plaintiffs' argument that pursuant to § 13a-55, they have more than a mere right of passage as abutting landowners to an abandoned highway. The plaintiffs contend that under § 13a-55, an abandoned road is the private equivalent to a public highway and, therefore, the defendant is interfering with the rights of the abutting landowners to have Stantack Road remain ungated and open for use by members of the public who are not abutting owners to the abandoned Stantack Road. The defendant contends that it is exercising municipal powers granted to it by the legislature and is not impermissibly interfering with the rights granted to property owners under § 13a-55. We agree with the defendant.

We previously have stated that "[t]he effect of § 13a-55 is to alter the common law consequences of the discontinuance of a public highway. While, before the statute, discontinuance extinguished both the public easement of travel and the private easement of access . . . after the statute, the public easement ceases but the private easement remains. The abutting owners now continue to have an easement of access over the discontinued highway." (Citations omitted.) *Luf* v. *Southbury*, 188 Conn. 336, 344, 449 A.2d 1001 (1982). Therefore, when the portion of Stantack Road that existed in Berlin was abandoned by the defendant, property owners such as the plaintiffs who own land abutting Stantack Road

continued to have a private right of access over the abandoned portion of Stantack Road. The public right of travel over the abandoned portion of Stantack Road terminated when the defendant formally abandoned that segment of the roadway. Section 13a-55 does not purport to reinstate that right of public access.

The plaintiffs argue, however, that a 1990 amendment to § 13a-55 suggests that the legislature intended that "abutting property owners [would now] have a right to maintain a discontinued highway as the private equivalent of a public highway." In 1990, the legislature amended § 13a-55 so that the right-of-way provided to abutting owners would be "for all purposes for which a public highway may be now or hereafter used . . . ." Public Acts 1990, No. 90-142, § 1. The plaintiffs suggest that by this amendment, the legislature conferred a continuing right of public travel over abandoned stretches of road. We disagree.

We are guided in our understanding of the meaning of the 1990 amendment by familiar principles of statutory construction. "Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory [interpretation], our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 39, 787 A.2d 541 (2002). The actual language of the statute, as amended by the legislature in 1990, does not illuminate our inquiry. We examine, therefore, the relevant legislative history concerning the 1990 amendment.

A review of this legislative history leads us to conclude that the 1990 amendment was intended to provide property owners, such as the plaintiffs, with the ability to use the private right-of-way along the abandoned stretch of road in order to carry utility services. The amendment was not intended to reintroduce public travel along a road that a town previously has abandoned.[6] Before this language was added to § 13a-55, it was unclear whether a property owner could bring water service or sewer service or other utility services to his property over the abandoned road. The 1990 amendment clarifies a property owner's right to do just that. The 1990 amendment, therefore, does not alter the fact that public access to a discontinued roadway ends when a town formally abandons the road, although the private right of access for abutting landowners continues.

[6] Comments by legislators regarding the 1990 amendment indicate that the purpose of the amendment was to permit the right-of-way to be used for utilities. For example, Senator Anthony V. Avallone stated: "The purpose of [the new language] was to allow lights, sewer use, water to go through an abandoned road to other pieces of property as was intended." 33 S. Proc., Pt. 4, 1990 Sess., p. 1022. Representative Anthony J. Nania summarized the general purpose of the new language: "This issue arose after we had the first go in 1985 in which we gave property owners along [an] abandoned right-of-way, [a] right to get to the highway. But the language we created then had been interpreted by a variety of [people] to include only the physical right of access so that whereas a property owner could drive his car to the highway, it wasn't clear whether he had the right to tell the power company that you can bring your line in [or] to tell the water company that you can bring me water, or the phone company or the cable company and so forth." 33 H.R. Proc., Pt. 15, 1990 Sess., p. 5184.

Representative Douglas C. Mintz' comments indicate that the 1990 amendment was not intended to provide members of the public with any right to use of the abandoned road: "I would state, though, that the intent was to limit this right to the abutting property owners. There is no right for any third party to use this right-of-way . . . . [The amendment says] the right-of-way may be used for the purposes of a public highway. It does not say the right-of-way is a public highway, it's just that the use of the right-of-way is for all of those uses that a public highway [may be used], which would include utilities . . . ." Id., pp. 5179–80.

This conclusion, however, merely begs the question of whether the defendant impermissibly interfered with the plaintiffs' private easement access rights when it installed the gate at the intersection of Lamentation Drive and the former Stantack Road. The plaintiffs argue that the grant of municipal powers from the legislature to the defendant does not include the ability to restrict use of Stantack Road to a limited class of persons, which, in this case, comprises the owners of land abutting Stantack Road. The defendant claims that it has appropriately exercised its municipal powers. We agree with the defendant.

"When municipal authorities are acting within the limits of the formal powers conferred upon them and in due form of law, the right of courts to supervise, review or restrain them is necessarily exceedingly limited." *McAdam* v. *Sheldon*, 153 Conn. 278, 281, 216 A.2d 193 (1965). General Statutes § 7-148 (c) contains a list of the various powers delegated to municipalities. Among them are the ability to regulate and prohibit traffic; General Statutes § 7-148 (c) (7) (B) (i); to prohibit and abate nuisances, including the right to prohibit and abate "all things detrimental to the health, morals, safety, convenience and welfare" of the municipality's inhabitants; General Statutes § 7-148 (c) (7) (E); to keep streets and other public places free from undue noise; General Statutes § 7-148 (c) (7) (F) (i); to prevent trespassing on public and private lands; General Statutes § 7-148 (c) (7) (F) (iv); and to regulate the use of highways. General Statutes § 7-148 (c) (7) (H) (xii). A municipality is also authorized to make its streets safe for public use and travel. General Statutes § 7-148 (c) (6) (C) (ii).

We conclude that the defendant was appropriately engaged in exercising the powers delegated to it to control and regulate traffic at the intersection of Stantack Road and Lamentation Drive, as well as to curtail

excessive noise in the general area. The record includes sufficient findings by the trial court, which are confirmed by an examination of the testimony and evidence upon which they are based, that the intersection had become unsafe and that use of the land around Stantack Road had generated many complaints from residents in the area. It was a reasonable measure, therefore, for the defendant to erect a gate at the intersection, the presence of which has resulted in improved safety conditions and decreased noise.[7]

Because the plaintiffs sought an injunction in the trial court, the trial court was acting pursuant to its equitable powers in determining whether to order the defendant to remove the gate. In making this determination, the trial court properly balanced the plaintiffs' continuing right of private access, as afforded by § 13a-55, against the defendant's right and responsibility to ensure the safety and security of its residents.[8] As a reviewing court, we cannot conclude that, in the exercise of its equitable powers, the trial court, in denying the plaintiffs' request for an injunction, abused its broad discretion or based its decision on an erroneous statement of the law.

---

[7] The plaintiffs suggest that the trial court's decision, taken to its logical conclusion, means that a town will now be able to limit the use of any of its roads to a specific class or classes of individuals. We disagree. We note that this case involves the continuing rights of property owners whose land abuts an *abandoned* road or a road any portion of which has been abandoned. There is, therefore, nothing in these facts, or the law, to suggest that a town will now be able to limit the use of its *nonabandoned*, public roads to certain groups of individuals.

[8] The trial court explicitly balanced these concerns as follows: "Under these circumstances, with the safety of the residents . . . at risk without the gate, and the access that the plaintiffs do have to their property by way of Footit Road and Stantack Road in Middletown and the fact that a key to the gate is available to all of the plaintiffs, this court concludes that the inconvenience of stopping to unlock the gate when compared to the personal safety of residents or visitors is reasonably minimal and not an undue obstruction or interference with the plaintiffs' right-of-way."

Finally, the plaintiffs claim that the trial court improperly concluded that removal of the gate was not warranted because the plaintiffs had not suffered irreparable harm from its erection and continued use. Specifically, the plaintiffs contend that the continued gating of Stantack Road constitutes irreparable harm because it interferes with their development rights. The defendant contends that the trial court correctly concluded that the plaintiffs had not suffered irreparable harm because their claims regarding this issue are speculative and unsupported by the record. We agree with the defendant.

The gate currently does not prevent development of the plaintiffs' properties; rather, it merely serves to limit travel between Lamentation Drive and the abandoned Stantack Road in Berlin.[9] Should the plaintiffs, at some future date, seek to develop their properties abutting Stantack Road, they could seek an injunction to require removal of the gate. At that point, a court weighing the equities might find the property owners' request for unimpeded access more compelling than did the trial court under the present circumstances. We agree with the trial court, however, that the plaintiffs' current use of Stantack Road is minimal and, therefore, outweighed by the defendant's need to provide a safe environment for its residents.

We note also that future development of the plaintiffs' property would likely necessitate improvements to Stantack Road for the portion of it that exists in Middletown.[10] As noted by the trial court, such development

---

[9] Because travel on Stantack Road generally was limited, by the fact of its undeveloped condition, to four-wheel drive and off-road vehicles, we emphasize the gate's limited impact on the plaintiffs' general use of the roadway. We also agree with the trial court's conclusion that there is "no evidence that [the plaintiffs] made much use of Stantack Road prior to the erection of the gate."

[10] Of course, as noted, the portion of Stantack Road that exists in Berlin, and upon which the gate is located, has been abandoned by the defendant. It would be up to the defendant to determine whether development of the

and road improvement would likely address many of the acknowledged safety problems in the area. The plaintiffs contend that this "puts the cart before the horse," because there can be no development without prior access. Under the trial court's decision, however, the plaintiffs continue to have access to Stantack Road by use of a key to the locked gate. Moreover, the plaintiffs' properties can be reached from the south, via Footit Road and Stantack Road in Middletown, so that the restriction on access from the north does not totally deprive the plaintiffs from accessing their properties.[11] For the foregoing reasons, we conclude that the trial court properly found that the continued use of the gate does not cause the plaintiffs irreparable harm and, therefore, properly denied the plaintiffs' request for an injunction requiring removal of the gate.

The judgment is affirmed.

In this opinion the other justices concurred.

---

plaintiffs' properties necessitates reactivating or otherwise reconfiguring the abandoned Stantack Road and improving it for regular travel.

[11] The plaintiffs contend that Middletown also could place a gate across the southern portion of Stantack Road, which would result in the plaintiffs being required to unlock a gate to gain access to their property either from the north or the south. This possibility, the plaintiffs claim, makes development of their property impossible. We note first the speculative nature of such a claim. We also do not agree that the mere fact that Middletown *could* erect a gate makes development of the plaintiffs' property impossible. If, at some future point, Middletown took action to erect such a gate, the plaintiffs obviously could seek appropriate relief.

