******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PRIME LOCATIONS OF CT, LLC, ET AL. *v.* ROCKY HILL DEVELOPMENT, LLC, ET AL.
## (AC 41417)

Lavine, Keller and Devlin, Js.

### *Syllabus*

The plaintiff lot owners sought a judgment declaring that a certain amendment to a declaration of easements, covenants and restrictions, which created a business park common ownership interest community, was invalid, and for injunctive relief. The declaration provided that each lot owner in the business park would be a member of an owner's association and would receive a vote that was proportional to its percentage ownership in the business park. The plaintiffs owned four of the seven lots in the business park, and brought the action against several defendants, including M Co. and D. M Co. owned lot 2, R Co. owned lot 1, and O Co. owned lot 7. M Co. proposed to sell lot 2 to D, who intended to use the lot to build a crematorium. Believing that the plaintiffs would oppose D's plan to build a crematorium, M Co., O Co. and R Co., the holders of more than 50 percent of the votes of the association, executed an amendment to the declaration that withdrew lots 1, 2, and 7 from the association and recorded it on the town land records. D thereafter purchased lot 2 from M Co., and sought zoning approval for the crematorium, a process in which the plaintiffs participated and confirmed that the defendants had withdrawn from the association. The town zoning commission denied D's application to build the crematorium and D appealed; D and the zoning commission reached a settlement agreement and filed a motion for approval of their settlement. The plaintiffs filed a motion to intervene as of right in the zoning appeal, taking the position that the defendants were not members of the association. The trial court denied the motion to intervene. D commenced construction of the crematorium and the plaintiffs thereafter sought, inter alia, to enjoin him from connecting lot 2 to the association's drainage system and a judgment declaring that the amendment to the declaration was void and unenforceable. After a trial to the court, the court rendered judgment in favor of the defendants, from which the plaintiffs appealed to this court. *Held*:

1. The trial court properly concluded that the declaration did not prevent lot owners from withdrawing their lots from the association, and, accordingly, the recorded amendment withdrawing lots 1, 2 and 7 from the association was proper, D was not required to be a member of the association when he purchased lot 2 from M Co. and his lot was no longer subject to the declaration's restrictions; the plain language of the declaration stated that it may be modified or terminated, and a modification or termination resulting in a lot owner's withdrawal from the association was not prohibited by the language in the declaration, the plaintiffs' prior conduct in acknowledging O Co.'s withdrawal from the association and its argument to the zoning commission that D was not a member of the association supported the trial court's determination that lot owners were permitted to withdraw their lots and was contradictory to the plaintiffs' argument on appeal that D was not permitted to withdraw his lot and was a member of the association; moreover, the plaintiffs could not prevail on their claim that, because R Co. had been permitted to withdraw from the association prior to the execution of the amendment, the lots owners signing the amendment held less than 50 percent of the lots, as the association failed to record R Co.'s withdrawal from the association on the land records, and the record reflected that, at the time the amendment was executed, R Co. was still a member of the association; furthermore, the plaintiffs could not prevail on their claim that the amendment did not comply with a provision (§ 47-236 (a) (1)) of the Common Ownership Interest Act that requires that an amendment to a declaration to be approved by at least 67 percent of the votes in the association, as that provision is inapplicable to a situation

in which the properties that are part of an association are not used for residential purposes.

2. The trial court did abuse its discretion in declining to grant the plaintiffs' request for an injunction preventing D from connecting lot 2 to the association's drainage system, the drainage system having been created as part of the subdivision approval, prior to the creation of the declaration and the easements created therein, and, in D's settlement with the zoning commission in his zoning appeal, the commission incorporated a proposal that D would utilize the drainage system.

Argued February 13—officially released August 18, 2020

*Procedural History*

Action for a declaratory judgment that, inter alia, a certain amendment to a declaration of easements, covenants and restrictions executed by the named defendant et al. is invalid, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the action was withdrawn as against the named defendant et al.; thereafter, the matter was tried to the court, *Aurigemma, J.*; judgment for the defendant MPM Enterprises, LLC, et al., from which the plaintiffs appealed to this court. *Affirmed.*

*Kevin J. McEleney*, with whom, on the brief, were *Richard D. Carella*, *Christopher A. Klepps* and *Matthew K. Stiles*, for the appellants (plaintiffs).

*Matthew S. Carlone* for the appellees (defendant MPM Enterprises, LLC, et al.).

*Opinion*

KELLER, J. This case was brought by the plaintiffs, Prime Locations of CT, LLC, Hasson Holdings, LLC, SMS Realty, LLC, and C&G Holdings, LLC, to prevent one of the defendants, Luke DiMaria, from constructing a crematorium on a lot in the Coles Brook Commerce Park in Cromwell. The plaintiffs appeal from the judgment of the trial court, rendered after a court trial, in favor of the defendants MPM Enterprises, LLC, (MPM Enterprises) and DiMaria.[1] On appeal, the plaintiffs argue that the court (1) improperly concluded that the Declaration of Easements, Covenants and Restrictions (declaration), which created a common interest community, the Coles Brook Commerce Park Owners Association, LLC (association), to govern the use of the property in the business park, did not prevent the defendants from voting to withdraw from the association a lot formerly owned by MPM Enterprises and currently owned by DiMaria, (2) improperly concluded that the defendants were entitled to connect a lot to the association's drainage system, (3) improperly concluded that the plaintiffs' cause of action was barred by the doctrines of laches and equitable estoppel, and (4) erred in declining to grant the plaintiffs' request for a permanent injunction prohibiting DiMaria from constructing a crematorium on his lot without approval from the association. We disagree with the plaintiffs and affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The Coles Brook Commerce Park is a business park located on Commerce Drive in Cromwell. The business park is divided into seven lots.[2] At the time of trial, DiMaria owned lot 2, Rocky Hill Development, LLC (Rocky Hill Development) owned lot 1, and Rescue One, LLC (Rescue One) owned lot 7. MPM Enterprises previously had owned lot 2 until it sold it to DiMaria. The plaintiffs owned lots 3, 4, 5 and 6. The association is a common interest community created by the Coles Brook Commerce Park Associates, LLC (declarant). The declarant created the association by executing the declaration. The declaration provides the following concerning its purpose: "Whereas, in order to develop the [p]roperty as a functionally integrated business park, [d]eclarant desires to establish and create certain easements, covenants, and restrictions affecting the [p]roperty and to create an '[a]ssociation' . . . to maintain, administer and enforce these covenants and restrictions . . . ."

The association is governed by the declaration and the bylaws of the association, dated September 27, 2004. Section 3.2 of the declaration provides that "[e]very owner shall be a member of the [a]ssociation." The declaration also provides: "Now therefore, [d]eclarant does hereby declare as follows: (i) no land, building, structure or portion thereof shall hereafter be used

and no building, structure or portion thereof shall be constructed, reconstructed, located, extended, enlarged or substantially altered on the [p]roperty except in conformity with the standards and specifications contained in this [d]eclaration; (ii) the [p]roperty shall be conveyed, hypothecated, encumbered, leased, occupied, built upon, or otherwise used, improved or transferred in whole or in part subject to this [d]eclaration and all of the easements, covenants, conditions and restrictions as set forth herein; and (iii) this [d]eclaration and all of the easements, covenants, conditions and restrictions as set forth herein shall run with the [l]ots and the balance of the [p]roperty for all purposes and shall be binding upon and inure to the benefit of all [o]wners, and their tenants, subtenants, employees, concessionaires, licensees, customers and business invitees, and their successors in interest."

The declaration defines an "owner" in § 1.1 as "the respective owners in fee simple of the [l]ots . . . ." Under the terms of §§ 3.2 and 3.3 of the declaration, every owner is a member of the association and has a proportionately weighted vote in the association's affairs.

Section 9.10 of the declaration provides: "Modification or Termination. This [d]eclaration may only be modified in part or terminated in its entirety by the recording in the [l]and [r]ecords of Cromwell, Connecticut, of an instrument modifying or terminating this [d]eclaration, signed by [o]wners and/or owners of portions of the [p]roperty that are not [l]ots having more than 50 [percent] of the votes of the [a]ssociation.[3] No modification may modify or terminate any easement created hereunder, including those referenced in Exhibit B attached hereto, that benefits or burdens any [o]wner's [l]ot without approval of that [o]wner. . . . Further, [d]eclarant (with respect to any [l]ots that [d]eclarant owns) and/or any other [o]wner or [o]wners (with respect to the [l]ot or [l]ots owned by them) shall have the right to add onto, resubdivide (which may result in more or less [l]ots existing), and/or reconfigure any [l]ot, at any time, in its and/or their sole discretion, subject to the provisions of this [d]eclaration and applicable land use regulations." (Footnote added.)

In its memorandum of decision, the court found the following facts: "On June 12, 2012, the [a]ssociation voted to remove [l]ot 1 from the [a]ssociation. It did not record an amendment or any other evidence of this vote on the Cromwell [l]and [r]ecords. Since June, 2012, the owner of [l]ot 1 did not participate in [a]ssociation meetings and did not pay dues.[4]

"Attorney Glenn Terk represented DiMaria with respect to his efforts to construct a crematorium on [l]ot 2 of the [p]roperty. Believing, apparently with good reason, that the members of the [a]ssociation would not approve of the building of a crematorium, Attorney

Terk took steps to attempt to remove [l]ot 2 from the [a]ssociation. He drafted an [a]mendment to [the declaration] dated July 26, 2012 ([amendment]). The amendment was signed by Matthew Holcomb, a member of MPM Enterprises, the proposed seller of [l]ot 2, Henry Vasel, a member of Rescue One, the owner of [l]ot 7, and Roger Tabshay, a member of Rocky Hill Development, the owner of [l]ot 1.[5] The [a]mendment contained the following language: 'WHEREAS, the original [d]eclaration to Coles Brook Commerce Park (the "[a]ssociation") is dated as of September 27, 2004 and recorded in Volume 1046 at Page 256 of the Cromwell [l]and [r]ecords; and WHEREAS, Rocky Hill Development, LLC is the owner of [lot] 1, Coles Brook Commerce Park and by virtue of such ownership is entitled to a 27.84 percentage interest in the [a]ssociation and entitled to a vote of 27.84 percent; and WHEREAS, MPM Enterprises, LLC is the owner of [lot] 2, Coles Brook Commerce Park and by virtue of such ownership is entitled to a 11.01 percentage interest in the [a]ssociation and entitled to a vote of 11.01 percent; and WHEREAS, Rescue One, LLC is the owner of [lot] 7, Coles Brook Commerce Park and by virtue of such ownership is entitled to a 15.30 percentage interest in the [a]ssociation and entitled to a vote of 15.30 percent; and WHEREAS, the above owners of [lots] 1, 2 and 7 are the holders of more than fifty (50) percent of the votes of the [a]ssociation; and WHEREAS, the parties desire to amend the [d]eclaration as hereinafter provided. NOW THEREFORE, in consideration of the mutual covenants and restrictions contained herein, the parties hereby agree as follows; 1. [Lots] 1, 2 and 7 are hereby withdrawn from the [a]ssociation. The owners of [lots] 1, 2 and 7 shall hereinafter no longer be considered "[o]wners" and shall no longer have any percentage ownership in common elements of Coles Brook Commerce Park, shall have no liability for common expenses for Coles Brook Commerce Park and shall hereafter no longer be entitled to a vote in connection with the activities of Coles Brook Commerce Park.

"As required by § 9.10 of the [d]eclaration, Rocky Hill Development, LLC, MPM Enterprises, LLC, and Rescue One, LLC recorded the [a]mendment on the Cromwell land records [on July 26, 2012]. [DiMaria] purchased lot 2 from MPM Enterprises on September 27, 2012, for the purposes of building a crematorium.

"In June, 2013, almost a year after the [a]mendment was drafted, the [a]ssociation's treasurer wrote a letter to Rescue One, [the owner of lot 7] which accepted Rescue One's withdrawal from the [a]ssociation. Although the [a]ssociation never sent a similar letter to DiMaria, he never paid any fees or dues to the [a]ssociation and never participated in its meetings. Moreover, throughout the lengthy zoning approval process, the [a]ssociation took the position that DiMaria *was not a part of the* [a]ssociation.

"[DiMaria] began to seek zoning approval for his crematorium in the spring of 2012 when the defendants[6] submitted an application for site plan approval to Cromwell's Planning and Zoning Commission ([commission]) for approval to construct a crematorium. Lot 2 as well as [the rest of the Coles Brook Commerce Park] is situated in Cromwell's industrial zone, in which a crematorium is a permitted use. The plaintiffs participated in the application process and were represented by Attorney Richard Carella. In connection with the application for site approval, Attorney Carella sent a letter to Stuart Popper, Cromwell's [t]own [p]lanner, in which he confirmed that the defendants had withdrawn from the [a]ssociation.

"On October 16, 2012, the [c]ommission denied the application to build the crematorium. DiMaria and MPM [Enterprises] appealed the denial. On July 25, 2013, the defendants and the [c]ommission reached a settlement agreement and on October 7, 2013, the [c]ommission filed a motion for approval of the settlement agreement. On October 11, 2013, the plaintiffs filed a motion to intervene as of right to be made party defendants in the zoning appeal. In the motion to intervene, the plaintiffs took the position that the defendants *were not members of the* [a]ssociation. The Superior Court for the judicial district of Hartford, *Wahla, J.*, denied the motion to intervene . . . .

"DiMaria commenced construction [of the crematorium] in August, 2014. DiMaria has never paid dues to the [a]ssociation, but has connected to the [a]ssociation's drainage easement." (Citation omitted; emphasis in original; footnotes added.)

On August 6, 2014, the plaintiffs initiated this action seeking (1) a declaratory judgment that the amendment was void and unenforceable, (2) a permanent injunction preventing the defendants from connecting lot 2 to the association's drainage system, and (3) a permanent injunction preventing the defendants from building any structure on lot 2 without approval from the association.[7] A trial was held on October 2 and December 19, 2014. The trial court, *Domnarski, J.*, issued a memorandum of decision rendering judgment in favor of the plaintiffs on the basis that the amendment was invalid because the declaration did not permit lot owners to withdraw a lot from the association. See *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, Superior Court, judicial district of Middlesex, Docket No. CV-14-6012319-S (December 19, 2014) (59 Conn. L. Rptr. 494). The defendants appealed to this court claiming that the trial court decided the case on the basis of an argument that was not raised or briefed by the parties, specifically, that the court's conclusion that the declaration did not permit a lot owner to withdraw from the association or permit the removal of a lot from the business park was not pleaded, briefed, or argued

before the trial court. On appeal, this court reversed the 2014 judgment rendered by the trial court and remanded this case for a new trial. See *Prime Locations of CT, LLC* v. *Rocky Hill Development, LLC*, 167 Conn. App. 786, 145 A.3d 317, cert. denied, 323 Conn. 935, 150 A.3d 686 (2016). On November 14, 2016, the plaintiffs filed a request for leave to file an amended complaint, to which the defendants objected.[8]

The first count of the plaintiffs' amended complaint dated November 14, 2016, alleged that the amendment is void ab initio for three reasons: first, the plaintiffs alleged that the amendment is precluded by the declaration; second, they alleged that the amendment is void per se because the parties that executed the amendment did not hold sufficient voting interest in the association; and finally, they alleged that the amendment failed to comply with the Connecticut Common Interest Ownership Act (COIA), General Statutes § 47-200 et seq. The second count of the complaint sought a permanent injunction prohibiting the defendants from utilizing a drainage system that the plaintiffs alleged can be used only by association members. The third count sought a permanent injunction preventing the defendants from constructing any structure on lot 2 without prior approval from the association.

A second court trial was held on August 16, 2017. The court, *Aurigemma, J.*, issued a memorandum of decision on February 1, 2018, rendering judgment in favor of the defendants. After setting forth the facts previously noted in this opinion, the court found that "[t]he gravamen of this action is that the [a]mendment is invalid. However, from the time the [a]mendment was filed until the time DiMaria started construction, the plaintiffs opposed DiMaria's plans on the ground that the [a]mendment *was valid* and DiMaria was *not* a member of the [a]ssociation. The delay in attacking the [a]mendment was inexcusable and [DiMaria] was prejudiced by the delay."

The court then found that "the [d]eclaration did permit the [a]mendment. However, even if it did not, the plaintiffs are estopped by the doctrine of equitable estoppel and laches from claiming that the [a]mendment is invalid. Judgment enters on the first count in favor of the defendants. The third count seeks an injunction prohibiting the defendants from constructing any structure on the DiMaria lot without approval of the [a]ssociation. As the plaintiffs are estopped from claiming that the defendants are still in the [a]ssociation, judgment enters in favor of the defendants on the third count insofar as that count seeks an injunction prohibiting construction.

"The plaintiffs argue that the [d]eclaration created the drainage easement for the benefit of the [a]ssociation and its [o]wners. The defendants voluntarily withdrew from the [a]ssociation and, therefore, DiMaria's

predecessor in interest, MPM Enterprises, voluntarily relinquished its right to use the drainage easement.

"The defendants argue that the drainage system was created as part of the subdivision approval and DiMaria's rights to use the drainage system arise from the [s]ubdivision [a]pproval, which occurred on August 3, 2004, prior to the filing of the [d]eclaration. The town of Cromwell has determined that DiMaria may tie into the storm water drainage system and has charged DiMaria a fee to tie into the system, which he has paid.

"The [d]eclaration states that easements, covenants, and restrictions run with the [l]ots and are binding on [l]ot owners and their successors in interest. In the settlement of the site plan appeal, DiMaria proposed to the [commission] that pavement runoff would discharge into a 'bay saver' structure and then to a detention water infiltration system with overflow directed to the road drainage system. That proposal was incorporated into the settlement with the [c]ommission." See *DiMaria* v. *Cromwell Planning and Zoning Commission*, Superior Court, judicial district of Hartford, Docket No. CV-126036891-S (December 23, 2013).

"Based on the foregoing, the court finds that the defendants have a right to tie into the storm water drainage system regardless of whether they belong to the [a]ssociation. Judgment enters in favor of the defendants on the second count of the complaint. The third count of the complaint also seeks an injunction prohibiting the defendants from utilizing the drainage easement. Judgment enters in favor of the defendants on the third count insofar as it seeks to prohibit their use of the drainage easement."

This appeal followed.

I

First, the plaintiffs claim that the court improperly concluded that the declaration does not prevent lot owners from withdrawing a lot from the association. We disagree.

We begin by setting forth the applicable standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . [W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995).

"In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the par-

ties and the transaction. . . . We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Citations omitted; internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 734–35, 873 A.2d 898 (2005).

"The meaning and effect of the [restrictive covenant] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met. . . . A restrictive covenant must be narrowly construed and ought not to be extended by implication. . . . Moreover, if the covenant's language is ambiguous, it should be construed against rather than in favor of the covenant." (Citations omitted; internal quotation marks omitted.) *Alligood* v. *LaSaracina*, 122 Conn. App. 479, 482, 999 A.2d 833 (2010).

Accordingly, to determine whether the amendment was valid and, therefore, lot owners were permitted to withdraw from the association, we must review the contested portion of the declaration in terms of the declaration as a whole as well as in the context of the surrounding circumstances. Section 9.10 of the declaration provides: "Modification or Termination. This [d]eclaration may only be modified in part or terminated in its entirety by the recording in the [l]and [r]ecords of Cromwell, Connecticut, of an instrument modifying or terminating this [d]eclaration, signed by [o]wners and/ or owners of portions of the [p]roperty that are not [l]ots having more than 50 [percent] of the votes of the

[a]ssociation.[9] No modification may modify or terminate any easement created hereunder, including those referenced in [e]xhibit B attached hereto, that benefits or burdens any [o]wner's [l]ot without the approval of that [o]wner. Notwithstanding the foregoing, [d]eclarant shall have the right, in its sole discretion, to modify the street lines of, extend the length of, or shorten, the [p]ublic [r]oadways (whether such [p]ublic [r]oadways are conceptual as depicted on the [m]ap or actually construed and installed) and/or install new or additional [p]ublic [r]oadways, provided that the same shall not materially and adversely affect the access to, or street frontage of, any [l]ot not owned by the [d]eclarant. Further, [d]eclarant (with respect to any [l]ots that [d]eclarant owns) and/or any other [o]wner or [o]wners (with respect to the [l]ot or [l]ots owned by them) shall have the right to add onto, resubdivide (which may result in more or less [l]ots existing), and/or reconfigure any [l]ot, at any time, in its and/or their sole discretion, subject to the provisions of this [d]eclaration and applicable land use regulations." (Footnote added.)

We agree with the trial court's determination that the declaration did not prevent the 2012 amendment and, therefore, the defendant lot owners in July, 2012, were permitted to withdraw lots from the association. The plain language of the declaration states that it may be modified or terminated. Section 9.10 continues by stating that, in accordance with the declaration, the modification or termination must be recorded in the Cromwell land records and must be signed by a majority of the voting land owners. The declaration also prohibits and restricts certain types of modifications and terminations.[10] Nowhere in these requirements and restrictions, however, does the declaration state that a lot owner is not permitted to withdraw a lot from the association. A modification or termination resulting in a lot owner's withdrawal of a lot from the association, although impactful, is not prohibited by the language in § 9.10 of the declaration. Further, because the declaration includes language limiting certain types of modifications or terminations (i.e., the termination of certain easements), we can infer that, if the declaration also intended to limit the ability of lot owners to withdraw a lot from the association, the declaration would have included express language limiting that action as well. "[I]t is well settled that we will not import terms into [an] agreement . . . that are not reflected in the contract." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 16, 938 A.2d 576 (2008). "A court simply cannot disregard the words used by the parties or revise, add to, or create a new agreement. . . . A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument." (Citation omitted; internal quotation marks omitted.) *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 598, 602

A.2d 1056 (1992).

In addition to the express language of the declaration, the trial court's determination that lot owners were permitted to withdraw lots from the association is also supported by the plaintiffs' previous conduct. Specifically, prior to commencing the present action, in June, 2013, the association, which includes the plaintiffs, sent a letter to Rescue One acknowledging its withdrawal from the association. The plaintiffs' prior acceptance of a withdrawal of a lot from the association is counter to its present argument that lot owners were not permitted to withdraw lots from the association. To the contrary, such acceptance suggests that withdrawal was permissible. Moreover, with regard to DiMaria's December 23, 2013 settlement agreement with the commission, the plaintiffs took the position that DiMaria was not a member of the association. Here, the plaintiffs attempt to take a contradictory position by arguing that DiMaria was not permitted to withdraw his lot from the association *and* is an existing member.

The plaintiffs also argue that the owners of the lots are required to be members of the association because § 3.2 of the declaration provides that "[e]very owner shall be a member of the [a]ssociation." The defendants argue that the plaintiffs' interpretation incorrectly links ownership of the lots with membership in the association and that § 3.2 would have to read "[e]very owner shall *always* be a member of the [a]ssociation" in order to import the meaning suggested by the plaintiffs. We agree with the defendants that the language of § 3.2 does not support the plaintiffs' position that lot owners are never able to withdraw their lots from the association. In addition, this portion of § 3.2 can be interpreted as simply conferring on owners the status as a member of the association rather than requiring that they must always remain a member.

The plaintiffs advance two other legal theories in support of their claim that the court improperly concluded that the declaration permits lot owners to withdraw lots from the association, neither of which we find availing. One of the plaintiffs' arguments is that the amendment to the declaration was invalid because the lot owners signing the amendment held less than 50 percent of the lots because Rocky Hill Development was no longer a member of the association. In response to this argument, the trial court determined that, "[a]lthough the [a]ssociation allowed Rocky Hill Development to withdraw from the [a]ssociation, it never recorded any amendment to that effect. That failure contravened the policies of [§] 9.10 of the [d]eclaration, which requires that in order to be valid, an amendment must be filed on the land records. The defendants correctly argue that at the time the [a]mendment was executed, all three signatories, MPM Enterprises, Rescue One, and Rocky Hill Development, were still part of the

[a]ssociation. Those three parties held more than 50 [percent] voting interest in the [a]ssociation at the time of the [a]mendment." We agree with the trial court's determination that there is no evidence in the record, namely, the document required to be filed in the land records, to support the plaintiffs' position that Rocky Hill Development was no longer part of the association at the time the amendment was signed. Therefore, the record reflects that, at the time the amendment was signed, Rocky Hill Development was entitled to 27.84 percent of the voting interest, and the three signing owner entities comprised more than 50 percent[11] of the total voting interest, and thus the parties effectuated a valid amendment.

Next, the plaintiffs advance the argument that the amendment did not comply with the CIOA. Specifically, the plaintiffs argue that, by failing to obtain sufficient votes required by General Statutes § 47-236,[12] the defendants failed to effectuate the amendment. With regard to the plaintiffs' argument, the trial court stated that there was a question as to whether the CIOA applied to the association because pursuant to § 47-236 (a) (3),[13] the CIOA's requirement of a 67 percent vote to amend a declaration does not apply in situations in which the properties that are part of an association are nonresidential. We agree with the trial court's determination that the lots are to be used within a functionally integrated business park and not for residential purposes. Therefore, we conclude that, in amending the declaration, the defendants did not need to comply with the CIOA voting requirement. On the basis of the foregoing, we conclude that the court properly concluded that the declaration did not prevent lot owners from withdrawing their lots from the association. Consequently, the recorded amendment was proper. DiMaria was not required to be a member of the association when he purchased lot 2 from MPM Enterprises and his property was no longer subject to the declaration's restrictions.

II

Next, the plaintiffs claim that, in denying their request for injunctive relief in the second count of their complaint, the court improperly concluded that the defendants were entitled to connect lot 2 to the association's drainage system even though the defendants expressly had waived any right to the association's common elements in purportedly withdrawing lot 2 from the association. We disagree.

We begin by setting forth the applicable standard of review. "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discre-

tion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand. . . . The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm. . . . We note also that, in exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction." (Citations omitted; internal quotation marks omitted.) *Tighe* v. *Berlin*, 259 Conn. 83, 87–88, 788 A.2d 40 (2002).

The plaintiffs have not demonstrated that the court abused its discretion by ruling in favor of the defendants and determining that DiMaria was entitled to connect his lot to the association's drainage system, despite the fact that lot 2 had been withdrawn from the association. One of the introductory clauses of the declaration states that "this [d]eclaration and all of the easements, covenants, conditions and restrictions as set forth herein shall run with the [l]ots and the balance of the [p]roperty for all purposes and shall be binding upon and inure to the benefit of all [o]wners, and their tenants, subtenants, employees, concessionaries, licensees, customers and business invitees, and their successors in interest." Further, § 9.10 of the declaration provides in relevant part: "No modification may modify or terminate any easement created hereunder, including those referenced in [e]xhibit B attached hereto, that benefits or burdens any [o]wner's [l]ot without the approval of that [o]wner."

The plaintiffs argue that, if the amendment permitted the withdrawal of DiMaria's lot from the association, then DiMaria is not permitted to use the drainage easement created under exhibit B of the declaration. The defendants alternatively argue that, on the basis of their argument in part I of this opinion, § 9.10 of the declaration permits the removal of any lot from the association, as well as for the complete termination of the association. Following this logic, the defendants argue that use of the drainage easement cannot be premised upon association membership because were the association to be terminated, the still usable lots would have nowhere to drain runoff water.

In determining that DiMaria was still permitted to use the drainage easement, despite the withdrawal of his lot from the association, the trial court stated the following: "The [d]eclaration states that easements, covenants, and restrictions run with the [l]ots and are binding on [l]ot owners and their successors in interest. In the settlement of the site plan appeal, DiMaria proposed to the [commission] that pavement runoff would

discharge into a 'bay saver' structure and then to a detention water infiltration system with overflow directed to the road drainage system. That proposal was incorporated into the settlement with the [c]ommission. . . . Based on the foregoing, the court finds that the defendants have a right to tie into the stormwater drainage system regardless of whether they belong to the [a]ssociation."

We agree with the defendants that the lot owners' use of the drainage easement is not predicated on membership in the association. Preliminarily, according to the express language of the declaration, the easements created by the declaration run with the land and are binding on all lot owners. Further, although not argued by the defendants in their appellate brief, we agree with the trial court's determination that the drainage system was created as part of the subdivision approval on August 3, 2004, prior to the filing of the declaration. Therefore, DiMaria's right to use the drainage system arose before the creation of the declaration and the easement rights created therein. Moreover, DiMaria's December 23, 2013 settlement with the commission incorporated a proposal that DiMaria would utilize the drainage system in question. On the basis of the foregoing, we conclude that the court did not abuse its discretion in declining to grant the plaintiffs' request for an injunction preventing DiMaria from using the drainage easement.

### III

Finally, we conclude that we need not address the plaintiffs' third claim, that the court improperly concluded that the plaintiffs' cause of action was barred by the doctrines of laches and equitable estoppel, or their fourth claim, that the court erred in declining to grant the plaintiffs' request for a permanent injunction prohibiting DiMaria from constructing a crematorium on his lot without approval from the association.

On the basis of our conclusion in part I of this opinion that the amendment was valid and therefore the defendants, being the current and prior owners of lot 2, were permitted to withdraw that lot from the association, the plaintiffs are unable to prevail with respect to either of these claims. These claims are dependent on the plaintiffs' having prevailed on their first claim, that the court improperly concluded that the declaration does not prevent lot owners from withdrawing a lot from the association.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rocky Hill Development, LLC, and Rescue One, LLC, were also named as defendants but the plaintiffs withdrew the action as against them prior to trial, and those two entities are not part of this appeal. We refer to MPM Enterprises and DiMaria as the defendants.

[2] Plaintiffs' exhibit 2, a subdivision map of the property, depicts the seven lots originally included in the association.

[3] In this case, all votes came from owners of entire lots and none of the votes came from owners of portions of lots.

[4] On June 12, 2012, the owner of lot 1 was Rocky Hill Development.

[5] At the time the amendment was signed, the plaintiffs owned lots 3, 4, 5 and 6. Those lots comprised 44.03 percent of the park property. MPM Enterprises owned lot 2, Rocky Hill Development owned lot 1 and Rescue One owned lot 7. Lots 1, 2 and 7 comprised 54.14 percent of the park property.

[6] The application was filed by MPM Enterprises and DiMaria, in anticipation of the sale of lot 2 to DiMaria.

[7] Counts two and three are alleged against both defendants, DiMaria and MPM Enterprises, but, practically speaking, because MPM Enterprises sold lot 2 to DiMaria, the counts really affect only DiMaria as the current owner of the lot.

[8] The court originally sustained the defendants' objection but, at a later date, held sua sponte that the plaintiffs' amendment to the complaint should be permitted.

[9] As previously noted, for purposes of this appeal, all of the defendants voting in favor of the amendment were owners of full lots, not portions of lots. See footnote 3 of this opinion.

[10] In accordance with the declaration, a modification or termination cannot modify or terminate an easement created under the declaration that benefits or burdens a lot owner without that lot owner's consent.

[11] As previously noted, Rocky Hill Development owned 27.84 percent, MPM Enterprises owned 11.01 percent, and Rescue One owned 15.3 percent, for a total of 54.15 percent.

[12] General Statutes § 47-236 (a) (1) provides that a declaration may be amended by "vote or agreement of unit owners of units to which at least sixty-seven per cent of the votes in the association are allocated, unless the declaration specifies either a larger percentage or a smaller percentage, but not less than a majority, for all amendments or for specific subjects of amendment . . . ."

[13] General Statutes § 47-236 (a) (3) provides that "[t]he declaration may specify a smaller number [of voting percentage] only if all of the units are restricted exclusively to nonresidential use."